# Bentley, *et al, v.* Barnes.

*Bill for Receiver and an Accounting.*

(Decided June 18, 1908. 47 South. 159.)

1. *Pleading; Demurrer; Filing.*—A demurrer should be to the bill as amended and not to the amendment to the bill.

2. *Same; Amendment; Inconsistency.*—A demurrer will lie to the amended bill when the amendment is inconsistent with the original bill and makes a new cause of action.

3. *Same; Departure.*—Where the original bill seeks specific performance of the contract of assignment and an accounting of the partnership business, together with a prayer for the foreclosure of the mortgages paid by complainant, an amendment by an assignee of the interest of the partner who had paid mortgages on the partnership property as a part of the consideration for the assignment against the assignor and other partners seeking specific performance of the contract of assignment, and an accounting of the partnership is not a departure, and does not render the bill subject to demurrer.

4. *Equity; Pleading; Multifariousness.*—A bill which seeks specific performance of a contract for an assignment of the interest of the partner in the partnership business and asks for an accounting from one who had transacted business with the assignor in violation of the provisions of the assignment as well as for an accounting from the other partners of the partnership business, is multifariousness, since the relief sought against the defendants respectively did not affect the interest of the co-defendant.

APPEAL from Covington Chancery Court.

Heard before Hon. W. L. PARKS.

Bill by W. R. Barnes against A. J. Bentley and others for the purposes stated in the opinion. From a decree overruling the demurrer to the amended bill, respondents appeal. Reversed and rendered.

C. E. REID, for appellant.—The bill as amended makes a new case of action.—*Glass v. Glass,* 76 Ala. 368; *Ward v. Patton,* 75 Ala. 207; *Scott v. Ware,* 64 Ala. 174; *Winston v. Mitchell,* 93 Ala. 554; *Park v. Lyde,* 90 Ala. 246; *Napier v. Gulf City Co.,* 69 Ala. 476; *Bank v. Burt,* 94 Ala. 130; *Lucas v. Osborn,* 34 Ala. 626; *Beddow v. Shepherd,* 118 Ala. 474; *Williams v. Cooper,* 107 Ala. 292; *McNeal v. Davis,* 105 Ala. 657; *Harrison v. Maury,* 140 Ala. 523.

FOOTER, SAMFORD & CARROLL, and HENRY OPP, for appellee. The bill is not multifarious.—*Sims v. Adams,* 78 Ala. 395; *Monroe v. Hamilton,* 27 Ala. 212. There was no departure.—*Decatur v. Cook,* 27 South. 559.

SIMPSON, J.—The original bill in this case was filed by the appellee, W. R. Barnes, against the appellants, A. J. Bentley, Union Naval Stores Company, the Ashe-Carson Company, and J. W. Wade, trustee. There were demurrers to the original bill, and motion to dismiss for want of equity, which were acted on by the court, and the bill was finally amended. As the present appeal is only from the decree of the court overruling the demurrer to the amended bill, we can consider only said demurrer.

As amended, the bill alleges that said A. J. Bentley, being the owner of certain real estate, executed three mortgages thereon to Benson, Henderson & Co.; that about January 25, 1905, Bentley took H. P. Anderson into partnership with him in the turpentine business on said land, and on the same day said Anderson & Bent-

ley exectued a deed of trust on said property to said J. W. Wade, as trustee for said Union Naval Stores Company, to secure a debt due to them; that on June 5, 1905, said Anderson sold his half interest in the partnership to said Union Naval Stores Company that on the same day said Bentley agreed, in consideration that complainant, Barnes, would take up said mortgages, to convey to him said Bentley's half interest in said partnership; that said mortgages were taken up and assigned to complainant, and Bentley put complainant in possession of the property, and the business was managed for two months, the complainant being general manager and Bentley working with the same for wages; that complainant procured advances from the Union Naval Stores Company, with Bentley's consent, to pay for crude turpentine, etc.; that soon after June 5, 1905, complainant formed a partnership with the Union Naval Stores Company, under the name of W. R. Barnes & Co., and said firm occupied the lands and engaged in the turpentine business, until August 5, 1905, when said Bentley excluded them from possession of the property, and continues to run the business, and continues to sell rosin and turpentine, the amount of which complainant cannot ascertain without discovery; that said Bentley has sold a considerable amount of turpentine and rosin to the Ashe-Carson Company, the amount of which can be asecrtained only by discovery; that under said mortgages said turpentine and rosin were pledged for the payment of the mortgage debt; that Bentley is insolvent; that before the filing of the bill the firm of W. R. Barnes & Co. was dissolved, and there has been no accounting of the partnership, and the jurisdiction of this court is necessary to effect a settlement, and complainant has no remedy against Bentley, save specific performance, and offers to cancel the mortgages. The prayers of the bill are: (1) To ap-

point a receiver of the assets of the firm of W. R. Barnes & Co.; (2) to order Bentley to convey his interest in all of the assets of the firm of W. R. Barnes & Co., and also of his interest in the firm of Bentley & Anderson; (3) for an accounting between the complainant and the Union Naval Stores Company of all the matters and things growing out of the partnership of W. R. Barnes & Co., and that said assets be sold and distributed; (4) to ascertain by reference to the register what assets of the partnership, or to which it is entitled, were received by Ash-Carson Company, and for a decree for the amount due.

The first assignment of error insisted on by the appellant is that the demurrer should have been sustained to the amended bill, on the ground that said amended bill was a departure from the original bill and set up a new cause of action, seeking "new, different, and inconsistent relief from that sought in the original bill." (See first, nineteenth, twentieth, twenty-first, and twenty-second causes of demurrer.) The appellee insists that an amended bill is not subject to demurrer for departure, but that the only proper way in which that can be raised is either by objection to the allowance of the amendment, on motion to strike it, or demurrer to the amendment itself. It is not proper to file a demurrer to an amendment to a bill, but the demurrer should be to the bill as amended. —*Hedges v. Verner,* 100 Ala. 613, 616, 13 South. 679. If the amendment is inconsistent with the original bill, and makes a new case, a demurrer will lie to the amended bill.—*Larkins, et al. v. Biddle, et al.,* 21 Ala. 252, 257; *Winter, et al. v. Quarles' Adm'rs.* 43 Ala. 693, 695; *Ward v. Patton,* 75 Ala. 207, 208; 1 Beach's Modern Eq. Prac. § 263. While it is true that one of the subjects of prayer in the original bill is that an account be had of the amount due on the mortgages, and an account between

complainant and the Union Naval Stores Company, and, if it be necessary, that the mortgaged property be sold, yet, even if that could be considered a prayer for a foreclosure of the mortgage, the general purpose in each is to have a receiver of the assets of W. R. Barnes & Co., to divest Bentley of his interest in the partnership, to ascertain and collect the amount due by Ashe-Carson Company, and to have an accounting between complainant and the Union Naval Stores Company and settle up the business of W. R. Barnes & Co. It cannot be said that the amendment was such a departure from the original bill as to be subject to demurrer for a departure.

The next question is whether or not the bill is multifarious. The courts have found it difficult to give any distinct definition of multifariousness, and the cases so nearly approach each other that it is not easy to distinguish them. A learned author states that "multifariousness means the joining together improperly in one bill of complaint of distinct and independent matters and thereby confounding them;" also that "a claim against two or more defendants cannot be properly united in the same bill with a separate claim against one only" (1 Beach on Modern Eq. Prac. §§ 115, 121) ; and in a subsequent section he gives the summing up of another author on the subject, which is instructive (section 129). Our own court has said that it "is generally understood to include those cases 'where a party is brought as a defendant on a record, with a large portion of which, and in the case made by which, he has no connection whatever.'" *Adams v. Jones,* 68 Ala. 117, 119. In that case, and in others, it is held that different parties having different interests in the same subject-matter, or common fund, may be united in the same bill.—*Bamberger, Bloom & Co. v. Voorhees, Miller & Rupel,* 99 Ala. 292, 298, 13 South. 305. Also, where a bill sought contribu-

tion from one or two joint makers of a note, secured by mortgage on real estate, and asked that a portion of the land, which had been sold, be declared subject to the lien, this court, holding that the land was the principal subject of controversy, said: "It is not necessary that all the parties should have an interest in all the matters of controversy. It is sufficient if each defendant has an interest in some of the matters involved, and they are connected with the others."—*Truss, et al. v. Miller,* 116 Ala. 494, 505, 22 South. 863. This court has also said that "it is no objection that the different defendants have separate interests in distinct questions, provided they are all connected with and come out of the single object of the suit, not dividing the remedy into two suits."—*Adams v. Wilson,* 137 Ala. 632, 635, 34 South. 831. On the other hand, this court has held that "a bill is multifarious which unites a joint claim against several defendants and a separate claim against one alone, with which the others have no connection."—(*McIntosh, et al. v. Alexander, et al.,* 16 Ala. 87) ; also that a bill is multifarious which seeks relief against a corporation, and also against fraud and wrongs perpetrated by stockholders and others of the corporation.—(*Tutwiler v. Tuscaloosa C. I. & L. C.,* 89 Ala. 392, 7 South. 398) ; also that a bill was multifarious which sought to enjoin a corporation from voting certain stock, and also to enjoin a former officer from voting stock issued to him in trust, claiming that the stock really belonged to the corporation—the court giving as one reason that "no common relief is claimed against the two, nor is it shown that relief against one will affect the other."—(*Amer. Refrigerator & Con'n Co. v. Linn,* 93 Ala. 610, 611, 7 South. 191) ; and also that a bill for devastatit against the personal representatives of some sureties on an administrator's bond, and for settlement of the estate, and

to enforce against the personal representatives of other sureties a penalty for failure to give notice to creditors, was multifarious—(*Paige, et al. v. Bartlett, et al.* 101 Ala. 203, 204, 13 South. 768.)

Probably the case which more nearly resembles the one now under consideration is the one which holds that a bill which seeks to enforce specific performance of a contract to convey a half interest in certain mill property, and also the dissolution and settlement of a partnership formed by the purchaser of such half interest and another party, is multifarious—*Bayzor v. Adams,* 80 Ala. 239. The primary object of the bill in this case is to wind up the partnership of W. R. Barnes & Co., and make settlement between W. R. Barnes and the Union Naval Stores Company, who were the only parties interested in that matter; so that, in so far as the bill seeks to have the receiver appointed, and to make settlement between said Barnes and said Union Naval Stores Company, it is not multifarious. But Bentley had no interest in the settlement of that partnership, and the Union Naval Stores Company had no intreest in the controversy between Bentley and said Barnes, nor did the Ashe-Carson Company have any interest in the settlement of the business of said firm, nor did Bentley have any interest in the claim of said firm against the Ashe-Carson Company: For these reasons, the demurrer on the ground of multifariousness should have been sustained.

The decree of the court is reversed, and a decree will be here rendered sustaining said demurrer.

Reversed and rendered.

TYSON, C, J. and HARALSON and DENSON, JJ., concur.